%JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lois Johnson-Hamerman and Conrad Hamerman | The Freshwater Group, Inc. |

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Arizona or California
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Daniel S. Weinstock, Esq., Feldman Shepherd, 1845 Walnut St., 21st Floor, Philadelphia, PA 19103; 215-567-8300

Attorneys (If Known)
Joseph Goldberg, Esq., Weber Gallagher, 2000 Market St., 13th Floor, Philadelphia, PA 19103; 215-972-7900

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health ☐ 690 Other | ☐ 840 Trademark | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | Exchange ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1446
Brief description of cause:
Plaintiffs allege negligence and loss of consortium relative to skilled nursing treatment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
05/06/2014

SIGNATURE OF ATTORNEY OF RECORD
*Jacqueline Henosa*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Lois Johnson-Hamerman and Conrad Hamerman, h/w | : : | CIVIL ACTION |
| v. | : | |
| The Watermark at Logan Square d/b/a the Srings at the Watermark, The Gardens at the Watermark, Watermark Retirement Communities, Inc., Watermark Logan Partners, LP, and The Freshwater Group, Inc. | : : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( x )

| May 6, 2014 | *Jacqueline Genese* | The Freshwater Group, Inc. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| | | jgoldberg@wglaw.com |
| 215-972-7900 | 215-564-7699 | jgenesio@wglaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 4411 Osage Avenue, Philadelphia, PA 19104

Address of Defendant: 1915 East Camino Miaval, Tucson, Arizona 85718  and/or San Francisco, California
see attached

Place of Accident, Incident or Transaction: The Watermark  at Logan Square, 2 Franklin Town Blvd, Philadelphia, PA 19103
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒
*RELATED CASE, IF ANY*:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) Medical Malpractice

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Jacqueline Genesio , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 5/6/14          *Jacqueline Genesu*          309073
                       Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/6/14          *Jacqueline Genesu*          309073
                       Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

## Designation Form Attachment

In this case, there is complete diversity of citizenship between the parties, as the plaintiff is a citizen of the State of Pennsylvania, while the defendants are citizens of Arizona and California.

Defendant The Freshwater Group, Inc. is an Arizona corporation with its principal place of business located at 1915 East Camino Miaval, Tucson, Arizona 85718.

Defendant Watermark Logan Partners, L.P. is a Delaware limited partnership whose members, David Freshwater, Matthew Reidy and Keiri Custodio are citizens of Arizona and/or California.

David Freshwater resides at 1915 East Camino Miraval, Tucson Arizona 85718

Matthew Reidy resides in San Francisco, California

Keiri Custodio resides in San Francisco, California

Watermark Logan Partners, L.P. is therefore a citizen of Arizona and California

Defendant Watermark Retirement Communities, Inc. is an Arizona corporation with its principal place of business located at 2020 West Rudasill Road, Tucson, Arizona 85704

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Lois Johnson-Hamerman and Conrad Hamerman, h/w,<br><br>     Plaintiffs<br><br>     vs.<br><br>The Watermark at Logan Square d/b/a the Springs at the Watermark, The Gardens at the Watermark and The Inn at the Watermark, Watermark Retirement Communities, Inc., Watermark Logan Partners, LP, and The Freshwater Group, Inc.,<br><br>     Defendants | No. _____-cv-_____ |

### <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1441(a) and 1446, Defendant, The Freshwater Group, Inc., hereby gives notice of removal of this action from the Court of Common Pleas for Philadelphia County, March Term 2014, No. 2943, to the United States District Court for the Eastern District of Pennsylvania and in support thereof avers as follows:

1.     This matter was initiated on March 19, 2014 via the filing of a Complaint with counts sounding in negligence and loss of consortium.  A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit "A"**.

2.     Petitioner/Defendant The Freshwater Group, Inc. was served with the Complaint on May 2, 2014.

3.     Plaintiffs reside at 4411 Osage Avenue, Philadelphia, Pennsylvania 19104.  <u>See</u> **Exhibit "A"** at ¶ 1.

4.      According to the Complaint, Plaintiff was provided treatment at The Watermark between November 13, 2012 and December 18, 2012, located at Two Franklin Town Boulevard, Philadelphia, Pennsylvania.  See **Exhibit "A"**, at ¶¶ 2, 9-29.

5.      As a result of this alleged treatment, Plaintiff claims that she sustained severe permanent injuries resulting in pain, suffering and disfigurement and seeks punitive damages against all Defendants. See **Exhibit "A"** at ¶¶ 59-62.

6.      If a defendant seeks to remove a pending State court action, it "shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . ."  28 U.S.C. §1446(a).

7.      The notice of removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting for the claim for relief upon which such action or proceeding is based . . ." 28 U.S.C. §1446(b).

8.      Pursuant to federal law, this Court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different states; [and] (2) citizens of a State and citizens or subjects of a foreign state . . ." 28 U.S.C. §1332(a)(1)-(2).

9.      For purposes of the removal analysis, a corporation is a citizen of both the state of incorporation and the state where it has its principal place of business. Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010)

10.     "A partnership, as an unincorporated entity, takes on the citizenship of each of its partners." Id. (internal citation omitted).

11.     In this case, there is complete diversity of citizenship between the parties, as the plaintiff is a citizen of the State of Pennsylvania, while the defendants are citizens of Arizona and California.

12.     Defendant The Freshwater Group, Inc. is an Arizona corporation with its principal place of business located at 1915 East Camino Miaval, Tucson, Arizona 85718.

13.     Defendant Watermark Logan Partners, L.P. is a Delaware limited partnership whose members, David Freshwater, Matthew Reidy and Keiri Custodio are citizens of Arizona and/or California.

14.     David Freshwater resides at 1915 East Camino Miraval, Tucson Arizona 85718.

15.     Matthew Reidy resides in San Francisco, California.

16.     Keiri Custodio resides in San Francisco, California.

17.     Watermark Logan Partners, L.P. is therefore a citizen of Arizona and California.

18.     Defendant Watermark Retirement Communities, Inc. is an Arizona corporation with its principal place of business located at 2020 West Rudasill Road, Tucson, Arizona 85704.

19.     Defendant "The Watermark at Logan Square" is a fictitious name registered to Watermark Logan Partners, L.P., a citizen of Arizona and California.

20.     Based upon Plaintiffs' Complaint, it is anticipated that counsel for Plaintiffs will seek damages in excess of $75,000.

21.     As the amount in controversy in this case will exceed $75,000, exclusive of interest and costs, the threshold has been met for this Court to exercise diversity jurisdiction.

22.     Therefore, this Court has original jurisdiction over the action pursuant to 28 U.S.C. §1332.  There is complete diversity of citizenship between the parties and the amount in controversy is anticipated to exceed $75,000, exclusive of interest and costs.

23.    This action is properly and timely removed pursuant to 28 U.S.C. §1441(a) and in accordance with the requirements of 28 U.S.C. §1446.

24.    This notice of removal is being filed within thirty days after service of the Complaint on The Freshwater Group, Inc. and with the expectation that the amount in controversy exceeds $75,000, thereby fulfilling the requirements for invoking the diversity jurisdiction of this Court.  28 U.S.C. §1446(b).

25.    Further, pursuant to 28 U.S.C. § 1446(d), Petitioner/Defendant is, concurrent with the filing of this Petition, providing notice of the removal of this matter to the Court of Common Pleas for Philadelphia County, Pennsylvania, and to all parties.

WHEREFORE, Petitioner/Defendant, The Freshwater Group, Inc., hereby removes the above action now pending in the Court of Common Pleas for Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.

Respectfully Submitted,

**WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP**

Date:  5/6/14                    By:  _Jacqueline Genesio_
                                 Joseph Goldberg, Esquire
                                 Attorney ID: 21376
                                 Michael B. Pullano, Esquire
                                 Attorney ID: 79389
                                 Jacqueline Genesio, Esquire
                                 Attorney ID: 309073
                                 (215) 972-7900
                                 jgoldberg@wglaw.com
                                 mpullano@wglaw.com
                                 jgenesio@wglaw.com
                                 Attorneys for Defendant,
                                 The Freshwater Group, Inc.

4

## CERTIFICATE OF SERVICE

I, Jacqueline Genesio, Esquire, attorney for The Freshwater Group, Inc., hereby certify

that a true and correct copy of the foregoing Petition for Removal was served via first-class mail,

postage pre-paid, upon the following on the date below upon the following counsel of record:

> Daniel S. Weinstock, Esquire
> G. Scott Vezina, Esquire
> Carolyn M. Chopko, Esquire
> Feldman Shepherd Wohlgelernter
> Tanner Weinstock & Dodig, LLP
> 1845 Walnut Street, 21st Floor
> Philadelphia, PA 19103
> *Attorneys for Plaintiffs*

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP

Date:  5|6|14          By: *Jacqueline Genesio*
                          Joseph Goldberg, Esquire
                          Michael B. Pullano, Esquire
                          Jacqueline Genesio, Esquire
                          Attorneys for Defendant,
                          The Freshwater Group, Inc.

# Exhibit A

Court of Common Pleas of Philadelphia County
Trial Division

## Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| E-Filing Number: 1403032619 | MARCH 2014   002943 |

| | |
|---|---|
| PLAINTIFF'S NAME<br>LOIS JOHNSON-HAMERMAN | DEFENDANT'S NAME<br>THE WATERMARK AT LOGAN SQUARE, ALIAS: THE INN<br>AT THE WATERMARK |
| PLAINTIFF'S ADDRESS<br>4411 OSAGE AVENUE<br>PHILADELPHIA PA 19104 | DEFENDANT'S ADDRESS<br>2 FRANKLIN TOWN BOULEVARD<br>PHILADELPHIA PA 19103 |
| PLAINTIFF'S NAME<br>CONRAD HAMERMAN | DEFENDANT'S NAME<br>WATERMARK LOGAN PARTNERS, LP |
| PLAINTIFF'S ADDRESS<br>4411 OSAGE AVENUE<br>PHILADELPHIA PA 19104 | DEFENDANT'S ADDRESS<br>2 FRANKLIN TOWN BOULEVARD<br>PHILADELPHIA PA 19103 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>THE FRESHWATER GROUP, INC. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>1915 EAST CAMINO MIAVAL<br>TUCSON AZ 85718 |

| TOTAL NUMBER OF PLAINTIFFS<br>2 | TOTAL NUMBER OF DEFENDANTS<br>4 | COMMENCEMENT OF ACTION<br>[X] Complaint   [ ] Petition Action   [ ] Notice of Appeal<br>[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |
|---|---|---|
| AMOUNT IN CONTROVERSY<br>[ ] $50,000.00 or less<br>[X] More than $50,000.00 | COURT PROGRAMS<br>[ ] Arbitration    [ ] Mass Tort         [ ] Commerce        [ ] Settlement<br>[X] Jury          [ ] Savings Action   [ ] Minor Court Appeal [ ] Minors<br>[ ] Non-Jury      [ ] Petition         [ ] Statutory Appeals [ ] W/D/Survival<br>[ ] Other: | |

CASE TYPE AND CODE
2M - MALPRACTICE - MEDICAL

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED<br>PRO PROTHY<br><br>MAR 19 2014<br><br>J. MURPHY | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES        NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: LOIS JOHNSON-HAMERMAN , CONRAD HAMERMAN

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>DANIEL S. WEINSTOCK | ADDRESS<br>FELDMAN SHEPHERD WOHLGELERNTER<br>TANNER 21ST FLOOR<br>1845 WALNUT STREET<br>PHILADELPHIA PA 19103 |
|---|---|
| PHONE NUMBER<br>(215) 567-8300 | FAX NUMBER<br>none entered | |
| SUPREME COURT IDENTIFICATION NO.<br>72940 | E-MAIL ADDRESS<br>dweinstock@feldmanshepherd.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>DANIEL WEINSTOCK | DATE SUBMITTED<br>Wednesday, March 19, 2014, 11:43 am |

FINAL COPY (Approved by the Prothonotary Clerk)

COMPLETE LIST OF DEFENDANTS:

1. WATERMARK RETIREMENT COMMUNITIES, INC.
   2020 WE RUDASILL ROAD
   TUCSON AZ 85704
2. THE FRESHWATER GROUP, INC.
   1915 EAST CAMINO MIAVAL
   TUCSON AZ 85718
3. WATERMARK LOGAN PARTNERS, LP
   2 FRANKLIN TOWN BOULEVARD
   PHILADELPHIA PA 19103
4. THE WATERMARK AT LOGAN SQUARE
   ALIAS: THE INN AT THE WATERMARK
   2 FRANKLIN TOWN BOULEVARD
   PHILADELPHIA PA 19103

FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
BY:   Daniel S. Weinstock, Esquire
        G. Scott Vezina, Esquire
        Carolyn M. Chopko, Esquire
ID #s: 72940/313355/94968
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
(215) 567-8300



Attorneys for Plaintiffs

| | |
|---|---|
| Lois Johnson-Hamerman and Conrad Hamerman, W/H<br>4411 Osage Avenue<br>Philadelphia, Pennsylvania 19104<br>v.<br>The Watermark at Logan Square d/b/a the Springs at the Watermark, The Gardens at the Watermark and The Inn at the Watermark<br>2 Franklin Town Boulevard<br>Philadelphia, Pennsylvania 19103;<br>and<br>Watermark Retirement Communities, Inc.<br>2020 West Rudasill Road<br>Tucson, Arizona 85704;<br>and<br>Watermark Logan Partners, LP<br>2 Franklin Town Boulevard<br>Philadelphia, Pennsylvania 19103;<br>And<br>The Freshwater Group, Inc.<br>1915 East Camino Miaval<br>Tucson, Arizona 85718 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>TERM, 2014<br><br>No. |

## COMPLAINT IN CIVIL ACTION

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107

Telephone: 215-238-1701

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Teléfono: 215-238-1701

Case ID: 140302943

Plaintiffs, Lois Johnson-Hamerman and Conrad Hamerman, by and through their counsel, Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig, LLP, file this Complaint in Civil Action and allege as follows:

## PARTIES

1.     Lois Johnson-Hamerman and Conrad Hamerman, husband and wife, are adult individuals, and citizens of the Commonwealth of Pennsylvania, residing at 4411 Osage Avenue, Philadelphia.

2.     Defendant, The Watermark at Logan Square d/b/a The Springs at the Watermark, The Gardens at the Watermark and the Inn at the Watermark ("The Watermark"), is a corporation, duly licensed, organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with offices and a place of business located at 2 Franklin Town Boulevard, Philadelphia.

3.     Defendant, Watermark Retirement Communities, Inc. ("Watermark Communities"), is a corporation, duly licensed, organized and existing under and by virtue of the laws of the State of Arizona, with offices and a place of business located at 202 W. Rudasill Road, Tucson.

4.     Defendant, Watermark Logan Partners, LP, ("Watermark Logan"), is a corporation, duly licensed, organized and existing under and by virtue of the laws of the State of Arizona with offices and a place of business located at 2 Franklin Town Boulevard, Philadelphia.

5.     Defendant, The Freshwater Group, Inc., ("Freshwater Group"), is a corporation, duly licensed, organized and existing under and by virtue of the laws of the State of Arizona, with offices and a place of business located at 1915 E. Camino Miraval, Tucson.

2

Case ID: 140302943

6.      Defendants, The Watermark, Watermark Communities, Watermark Logan and Freshwater Group, (collectively "Defendants"), are engaged in the business of owning, operating and/or managing nursing homes, providing healthcare, medical services, nursing care, assisted living/personal care to the public in Philadelphia, Pennsylvania, and operated a facility that provided or was obligated to provide care to Lois Johnson-Hamerman.

7.      Plaintiffs are asserting professional liability claims against Defendants, their agents, servants, contractors, subcontractors and/or employees.

8.      This medical negligence case has been reviewed by a qualified expert witness, as required by the Pennsylvania Rules of Civil Procedure.  This expert has signed a written report supporting these claims.  Executed Certifications of Counsel confirming same are appended hereto and made a part hereof.

## FACTUAL BACKGROUND

9.      Lois Johnson Hamerman was admitted to The Watermark from the Hospital of the University of Pennsylvania on or about November 13, 2012, for continuing wound care and rehabilitation secondary to a resolving right foot cellulitis.  She was also noted to be incontinent of bladder and bowel.

10.     Over the course of Mrs. Hamerman's residency at The Watermark, defendants engaged in a pattern of care replete with harmful and injurious omissions and neglect as described herein.

11.     Throughout Mrs. Hamerman's residency, the defendants consistently failed to perform timely assessments and failed to contact the appropriate health care providers when the need developed.  There were substantial gaps in The Watermark defendant's chart that made continuity of care a virtual impossibility and evidenced a lack of care.

3

12.    On November 14, 2012, a nursing progress note indicated "dry peeling skin" measuring "9.0 x 5.0" on Mrs. Hamerman's sacrum.

13.    By November 20, 2012, a nursing progress note indicated Mrs. Hamerman had complained of "soreness in sacral area due to an open wound that had developed from constant pressure while in bed."

14.    On November 20, 2012 at 10:30 a.m. a "wound care note" provided: "resident noted on admission with dry peeling skin to sacrum measuring 9.0 x 5.0." The note further provided "called to resident's room on 11/19 by CNA (certified nursing assistant) who reports area getting worse . . . resident now with approximately 8.0 x 12.0 x 0.1  DTI area with maroon center and surrounding area with peeling tissue with [signs and symptoms] of infection."

15.    Orders were written to begin Santylo, a wound dressing, and that dry dressing changes be performed daily.  A pressure relief mattress was ordered.

16.    On November 20, 2012 a "late entry" progress note indicated a charge nurse was notified by the CNA that the condition of Mrs. Hamerman's sacrum had worsened over the past days.  According to the late entry progress note, new orders were written to "turn [Mrs. Hamerman] every two hours" while in bed.

17.    Over the next several days, the sacral wound continued to worsen.  Despite the order that Mrs. Hamerman be turned *every two hours*, she was not so treated.

18.    On November 20, 2012, a "wound care note" indicated a "small amount of drainage" was present from the sacral wound.  The sacral wound was noted to be a "non-staged area."

19.    On November 20, 2012, a "wound skin assessment note" indicated the size of the sacral wound had grown to 7.0 x 11.3 by 0.1.  No new orders were provided.

4

20.     On December 3, 2012, a nursing note indicated the sacral wound had "yellow sloughing surrounded by redness and excoriation." Mrs. Hamerman was medicated for pain.

21.     On December 5, 2012, a "wound skin assessment note" indicated the sacral wound was "8.5 x 10.7 x 0.1 cm," with "yellow slough" and "edges are jagged and irregular."

22.     On December 5, 2012, a "wound care note" indicated the sacral wound was still "non-stagable." The note further indicated "encouraged to turn and reposition." Despite mention of turning and repositioning, this was not done.

23.     On December 10, 2012, the sacral wound was noted to have "no improvement."

24.     On December 12, 2012, a "wound care note" indicated the size of the wound had grown to 7.0 x 9.0 x 1.0 cm. The sacral area was noted to be "non-stagable, with moderate amount of serous greenish drainage. Edges are irregular and defined."

25.     Later on December 12, 2012, a physician's order indicated Santylo to be discontinued and that the wound be packed with one-quarter strength acitic acid wound dressing, twice a day.

26.     By December 13, 2012, the sacral wound was noted to be "foul smelling." At this time, an opening on the left buttock was also noted. Mrs. Hamerman was medicated for pain.

27.     On December 18, 2012, a progress note indicated "the sacral wound looks worse and was foul smelling." There was also noted to be "tunneling at 11:00." Mrs. Hamerman was medicated for pain.

28.     On December 18, 2012, Mrs. Hamerman's family insisted she be transferred to the emergency department at Pennsylvania Hospital for evaluation of the wound.

5

29.    On December 18, 2012, Mrs. Hamerman was admitted to Pennsylvania Hospital, where she remained hospitalized until January 13, 2013 for intensive treatment and management of what was diagnosed as a Stage IV sacral decubitus ulcer.

## COUNT I

## LOIS JOHNSON-HAMERMAN v. ALL DEFENDANTS

30.    Plaintiffs hereby incorporate by reference paragraphs 1 through 29 as though same were set forth at length herein.

31.    During the course of her residency, Mrs. Hamerman was incapable of independently performing all of her daily care and personal needs without reliable assistance.  In exchange for monies, she was admitted to the Watermark to obtain such care and protection.

32.    Defendants, through advertising, promotional materials and information sheets, held themselves out as being able to provide skilled nursing care to chronically ill individuals, including Mrs. Hamerman.

33.    At all times material hereto, the Defendants represented that they were capable of providing skilled nursing care and total health care, akin to a hospital, and assumed responsibility for Mrs. Hamerman's total health care, including care planning and the provision of medication, medical care and treatment, therapy, nutrition, hygiene, and all activities of daily living.

34.    Defendants, individually and/or through their agents, employees, and/or ostensible agents, servants, contractors, subcontractors, staff and representatives, were required to assess the needs of Mrs. Hamerman and promised that they would adequately care for her.

35.    As a part of their duties and responsibilities, Defendants had an obligation to establish policies and procedures that addressed the needs of the residents of the Watermark, including Mrs. Hamerman, with respect to the recognition and/or treatment of medical conditions

6

similar to those experienced by Mrs. Hamerman, in order to ensure that timely and appropriate care would be provided.

36. Defendants' governing body shared a responsibility for the day to day operations of the facility, and was responsible for preventing the abuse and neglect suffered by Mrs. Hamerman.

37. Defendants had an obligation to employ competent, qualified staff so as to ensure that proper treatment is rendered to individuals having medical problems, such as those presented by Mrs. Hamerman as set forth herein.

38. As a part of their duties and responsibilities, Defendants had an obligation to maintain the Watermark with adequate staff and sufficient resources to ensure the timely recognition and appropriate treatment of medical conditions suffered by residents, such as Mrs. Hamerman, whether within the Watermark or obtained from other medical care providers.

39. At all times material hereto, Defendants made a conscious decision to operate and/or manage the Watermark so as to maximize profits at the expense of the care required to be provided to their residents, including Mrs. Hamerman.

40. In their efforts to maximize profits, Defendants negligently, intentionally and/or recklessly reduced staffing levels below the level necessary to provide adequate care to residents.

41. Defendants recklessly and/or negligently disregarded the consequences of their actions, and caused staffing levels at the Watermark to be set at a level such that the personnel on duty at any given time could not reasonably attend to the needs of their assigned residents, including Mrs. Hamerman.

7

42.     Over the past several years, and at all times material hereto, Defendants intentionally increased the number of sick, elderly and frail residents with greater health problems requiring more complex medical care, in an effort to increase their reimbursements.

43.     Defendants knew this increase in the acuity care levels of the resident population would substantially increase the need for staff, services and supplies necessary for the new resident population.

44.     Defendants knew the acuity needs of the residents in their nursing home increased, and that the resources necessary to meet their needs increased, including the amount of staffing.

45.     Defendants knew that research showed that poor staffing and high employee turnover may increase the risk of abuse and neglect to residents like Mrs. Hamerman.

46.     The actions of Defendants were designed to increase reimbursements by governmental programs, which, upon information and belief, are their primary source of income.

47.     The aforementioned acts directly caused injury to Mrs. Hamerman.

48.     At all times material hereto, Defendants were operating through their Board of Directors, corporate officers, governing body, agents, servants, workers, employees, contractors, subcontractors, staff, and/or principals, who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment.

49.     At all times material hereto, Defendants had a non-delegable duty to ensure that the rights of their residents, including Mrs. Hamerman, were protected.

50.     At all times material hereto, Defendants owed a non-delegable duty to Mrs. Hamerman and other residents to hire, train, and supervise employees, so as to deliver healthcare and services to residents in a safe and reasonable manner.

8

Case ID: 140302943

51.     Defendants' director of nursing, and/or other staff members of the Watermark, sent frequent written reports to the corporate personnel detailing the number and types of injuries, illnesses, and infections sustained by Mrs. Hamerman and the other residents in the Watermark.

52.     Despite being made aware of the types and frequency of injuries, illnesses, and/or infections, many of which were preventable, sustained by the residents of the Watermark, including those suffered by Mrs. Hamerman, Defendants' administrators failed to take steps to prevent the occurrence of said injuries, illnesses, and/or infections.

53.     Defendants knew of the aforementioned problems that were occurring with the care of Mrs. Hamerman, as they were placed on actual notice of them.

54.     The corporate conduct of Defendants was independent of the negligent conduct of the Defendants' employees, and was outrageous, willful, and wanton, and exhibited a reckless indifference to the health and well-being of the residents, including Mrs. Hamerman.

55.     At all times material hereto, the breach of duties, negligence, carelessness and recklessness of Defendants, individually and/or acting by and through their officers, board members, physicians, medical directors, physicians' assistants, nurses, certified nurses' aides and office staff who examined, treated and/or communicated the condition of Mrs. Hamerman, and through the administrative personnel responsible for hiring, retaining and/or dismissing staff, staff supervision and policy-making and enforcement, as well as any agents, servants, employees, contractors, subcontractors and/or consultants of Defendants consisted of the following acts and omissions in the care and treatment of Mrs. Hamerman:

a.      failure to hire, select and retain appropriately trained staff to provide adequate preventative skin care, nutrition and fluids to prevent malnutrition and dehydration;

9

Case ID: 140302943

b.  failure to appropriately train staff members to provide: 1) adequate preventative skin care to prevent the development and progression of pressure sores and other skin breakdown; 2) accurate documentation of health services and care rendered;

c.  failure to provide adequate preventative skin care allowing for the development and worsening of wounds by failing to properly follow wound care specialist instructions and administer wound care cleaning;

d.  failure to provide appropriate treatment and services to prevent infection by failing to provide proper hygiene;

e.  failure to provide Mrs. Hamerman with proper medication and skin care;

f.  failure to respond in a timely manner with appropriate medical care when Mrs. Hamerman was injured, including when she experienced sacral wounds, infections, skin breakdown and pain when Defendants knew or should have known that she was at risk for the same;

g.  failure to provide adequate and appropriate health care by failing to keep Mrs. Hamerman free from infection, failing to respond to a change in condition in a timely manner, failing to provide an adequate assessment following a change in condition, failing to provide adequate, preventative skin care, failing to provide adequate hygiene, failing to provide adequate nutrition impacting wound healing ability, failing to provide adequate hydration, failing to properly manage pain and failing to administer medications in the manner ordered by physicians;

h.  failure to develop and follow an appropriate care plan;

i.  failure to ensure that each resident, including Mrs. Hamerman, received the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

j.  failure to ensure that a resident who enters the facility having wounds receives necessary treatment and services to promote healing, prevent infection and prevent new wounds from developing;

k.  failure to ensure that the facility had sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by the resident assessments and individual plans of care;

l.  failure of the facility to be administered in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, including Mrs. Hamerman;

10

m.  failure to review and/or take action upon incident/accident reports and/or medication error reports that the defendants knew to be indicative of abuse and neglect to its residents so as to prevent future abuse and neglect to residents like Mrs. Hamerman;

n.  failure to formulate, adopt and enforce adequate rules, procedures and policies to prevent skin wounds, infections, malnutrition, dehydration and pain;

o.  failure to undertake and/or implement the instructions provided by physicians;

p.  failure to provide Mrs. Hamerman with appropriate medication for pain management;

q.  failure to assist Mrs. Hamerman with her personal hygiene;

r.  failure to implement personnel policies and procedures that define job responsibilities, accountability and the performance appraisal process and emphasize the importance of the health care team in the delivery of quality resident care;

s.  failure to implement physicians' orders and to keep physicians informed, resulting in delay of treatment and harm to Mrs. Hamerman.

56.  Defendants' corporate officers were aware of annual and/or periodic governmental/state survey results.

57.  Defendants were aware that they had been cited by the Pennsylvania Department of Health for the following deficiencies prior to Mrs. Hamerman's residency:

a.  On January 15, 2010, the defendants were cited for failing to accurately assess, monitor and implement preventative measures for the development of a pressure ulcer for a resident;

b.  On January 15, 2010, the defendants were cited for failing to maintain a clean and sanitary facility;

c.  On January 15, 2010, the defendants were cited for failing to maintain an effective pest control program so that the facility is free of pests and rodents;

d.  On January 15, 2010, the defendants were cited for failing to maintain clinical records on each resident in accordance with accepted professional standards and practices that are complete, accurately documented and

11

readily accessible where inspection of a resident's medical records revealed physicians orders were not being properly carried out;

  e.   On February 10, 2011, defendants were again cited for failing to prevent pressure sores;

  f.   On February 10, 2011, defendants were cited for failing to follow the standards of nursing practice for wound care and to follow the acceptable protocols for infection control.

58.   These repeated deficiencies establish defendants' actual notice of the problems existing at the Watermark.

59.   As a direct and proximate result of the defendants' acts and/or omissions, and their breach of their duty of care, negligence, carelessness and recklessness, Mrs. Hamerman suffered:

  a.   severe permanent physical injuries resulting in pain, suffering and disfigurement;

  b.   mental anguish, embarrassment, humiliation, degradation, emotional distress, and loss of personal dignity;

  c.   loss of capacity for enjoyment of life;

  d.   expense of otherwise unnecessary hospitalization, medical expenses and residency at the Watermark; and,

  e.   aggravation of her pre-existing medical conditions.

60.   In causing the aforementioned injuries, Defendants knew Mrs. Hamerman would likely suffer such harm.

61.   Defendants' conduct was intentional, outrageous, willful and wanton, and exhibited a reckless indifference to the health and well-being of Mrs. Hamerman.

62.   Defendants' conduct was such that an award of punitive damages is justified.

WHEREFORE, Plaintiff, Lois Johnson Hamerman, respectfully requests that judgment be entered in her favor, and against defendants, in an amount in excess of the compulsory

Case ID: 140302943

arbitration limits, together with reasonable counsel fees, costs, and any other relief that this Honorable Court deems appropriate given the circumstances. Plaintiff further requests that punitive damages be assessed against Defendants.

<u>COUNT TWO</u>

<u>CONRAD HAMERMAN V. DEFENDANTS</u>

63.     Plaintiff hereby incorporates by reference paragraphs 1-62 as though same were set forth at length herein.

64.     As a result of the conduct of Defendants, as described above, Conrad Hamerman has suffered a significant loss in the society, companionship, consortium and services of his wife, Lois Johnson Hamerman, and he will continue to suffer such loss for the rest of his life.

**WHEREFORE,** Plaintiff, Conrad Hamerman, respectfully request that judgment be entered in his favor, and against Defendants, in an amount in excess of the compulsory arbitration limits, together with reasonable counsel fees, costs, and any other relief that this Honorable Court deems appropriate given the circumstances.

FELDMAN, SHEPHERD, WOHLGELERNTER,
TANNER, WEINSTOCK & DODIG, LLP

Daniel S. Weinstock, Esquire
G. Scott Vezina, Esquire
Carolyn M. Chopko, Esquire
Attorneys for Plaintiffs

Dated: 3/18/14

13

Case ID: 140302943

## VERIFICATION

I, Lois Johnson-Hamerman, hereby state that I am plaintiff in this foregoing action, and that the attached Complaint is based on information which I have furnished to my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not mine. I have read the Complaint and to the extent that the information therein is based upon information I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_1-14-2014_

_Lois Johnson Hamerman_
Lois Johnson-Hamerman

14